Good morning, Mr. Chief Judge, Your Honors. May it please the Court, at the outset I would ask to reserve two minutes of my time for rebuttal. You have whatever is left on that clock. Your Honor, in this appeal, Mr. Farshidian is not claiming that he was entitled to receiving actual notice from the Immigration and Naturalization Service of the deadline to file a claim under the Conventions Against Torture. We did not brief the actual notice issue in our opening brief, and we further clarified in our reply brief that that's not an issue in this case. In fact, in our reply brief, we again kind of honed in on the fact that the only issue is equitable tolling. And with respect to that, in Sukhokoff v. Gonzalez, Sukhokoff-Gonzalez v. INS, this Court held that the presumption that filing deadlines are subject to equitable tolling extends to the INS's regulations as well. I don't think the government is questioning that at all here. What they are questioning is whether you've met the burden of proving the facts that are required to justify equitable tolling, correct? That's correct, Your Honor. Okay. Can you just basically summarize how you met that burden? Yes, Your Honor. Your Honor, between the dates of October of 1998 and August of 1999, Mr. Farshidian was housed at the Kern County Jail. And while he was housed at the Kern County Jail, he declared both initially and while this case – this case actually came up from the district court prior to the passage of the Real ID Act. In both places, he indicated very clearly that while he was at the Kern County Jail, most of the time he was on lockdown. He made many requests to speak to an immigration officer and never had the opportunity to speak to an immigration officer. The government is not – as I understand the government's argument, maybe to make it clear, they're not disputing the fact that while he was at Kern County, it should have been tolled. It's what happened after he got out of Kern County that they believe started the clock again. Very well, Your Honor. I'll focus on the time after he comes back to the San Pedro detention facility. And that happens on August 2nd of 1999. Once he was returned to the San Pedro detention facility, Mr. Farshidian once again declares that he regularly requested library – law library access, and when permitted, he went to the law library. During this time in the law library, he diligently looked for any laws relevant to his case. He did not find any useful materials other than the mailing addresses of various international agencies and public interest organizations. He constructed a letter-writing campaign to these various agencies and organizations and asked for assistance with his case, not just specific to CAT, to any relief that might have been available for him out there. And it's as a result of that letter-writing campaign that on December 10th of 1999, that he received a letter from the UN High Commissioner on Refugees, indicating that there might be potential relief available under CAT. It's pretty apparent that the brochure that he received was probably an outdated brochure because when we see his first filing, and it's in the administrative record at 408, it's clear that the brief that he initially filed claiming relief under CAT kind of foresaw the promulgation of the regulations by the Immigration and Naturalization Service. He was not under – he didn't have any idea that that time had come and gone. He thought that the rules were yet to be promulgated. So he briefed it in the first instance, indicating that he hadn't – that even if the rules have not yet been promulgated, just under the treaty itself, he should be allowed to seek relief under CAT. And it's only later that he learned that the time had come. None of this is in any way the fault of the United States. I understand that, Your Honor. I – it's clear from Scowcroft-Gonzalez v. INS that it doesn't need to be the fault of the United States. In fact, the Ninth Circuit in that case determined that no showing of wrongful conduct by a third party is necessary for an equitable tolling finding. The Court went on to say that the only thing that the moving party or the invoking party needs to demonstrate is that his or her ignorance of the limitations period was caused by circumstances beyond his control. And the critical question that this comes down to, because there's – there's no dispute that when he was permitted to go to the library, he did. The question here is, did he do everything in his power to try to learn of CAT relief? How do we limit that? Meaning there are an awful lot of people who are ignorant of the law and under certain circumstances that constrain their ability to learn more about the law. They do everything in their power, yet the relevant law is so deeply buried or at least so inaccessible to them that they don't learn about it until too late. I don't think the equitable tolling doctrine necessarily helps those people. I think the equitable tolling – Well, you see, I'm trying to figure out how is what I've just described in relatively abstract terms different from your client. That is, as far as I can tell, he has not alleged, maybe because he doesn't know, whether the Federal Register was in the San Pedro facility. And even if it had been, given his state of knowledge, I'd be astounded if he would have found the relevant provision. I mean, what's he going to do, just read every page of the Federal Register? And, Your Honor, I think that that's – that's the critical issue here. Because if there was anywhere in the record that it was clear that during the relevant time period that the Federal Register was at the San Pedro detention facility, there would be no issue in this case. And we understand the construct of the equitable tolling argument. Our position is that – Did he allege in his motion to reopen that the Federal Register was not in the San Pedro facility? No, Your Honor. And it's because he did not know that that's what he was looking for at the time. So in his motion to reopen, he was – he was still under the perception that the promulgation of the regulations hadn't even come through as yet. He was basing his motion to reopen based on the brochure that he received from the high court. This case comes in a very tough procedural posture because motions to reopen are usually pretty perfunctory determinations by the BIA, as I think they necessarily must be. And if a denial of a motion to reopen then turns out to require all kinds of inquiry as to whether or not certain documents were available, this complicates the motions to reopen practice enormously. Your Honor, I don't necessarily think so. I think that if it's a question of adequacy of a law library, I think that the respondent in that situation can demonstrate the adequacy of a law library and the issue becomes very simple in that instance. But that's not the issue here. That is the issue, Your Honor. The issue is that he didn't look. And we don't know whether there was a Federal Register, if he had looked for it, whether it was there and he could have found it. What you said is he didn't look for it because he was misled by this other thing. No, Your Honor. I didn't say that. I didn't say that he didn't look for it. He looked for everything that was available to him in the San Pedro Library. I think he declares that both in the initial motion to reopen and, again, in connection with the habeas proceeding from which this comes up. He said he did everything he could. He said he went to the law library and he was diligent. And his diligence is actually expressed through his letter writing. Do we know there was no Federal Register? Your Honor, we do not know whether there was a Federal Register. Okay. So all we know is that he did what he thinks is his best, which may or may not have been very good, and the thing may have been there, and he didn't find it because he didn't know to look for it. How is that different from everybody else in the world who doesn't know the law? Your Honor, it's not a question of not knowing the law because you could see from his filing that he was doing everything he could to learn the law, and he was making every available resource at the library and making full use of it. Everybody can say that. Some people are just more limited in what they can do, and some people don't know to look for the law. I said, gee, if I had only known to look for it, I would have found it. But that doesn't tell us very much. It doesn't make your client any different from anybody else. Your Honor, while everybody can say that, not everybody can show the diligence that they exercised while they were at the library. With respect to one of the cases that was cited. So what if it turns out there was a Federal Register entry while he was there, so it was a Federal Register, and he just didn't find it? Then I believe we lose, Your Honor. I think the question is very clear in this case. Was the library at the San Pedro detention facility adequate? And it's... So assuming we agree with you, then what do we do? We remand, say, conduct a fact-finding proposition as to whether or not the Federal Register was there? Yes, Your Honor. There's two parts to the inquiry. The one part is... I don't understand what difference it makes. If he doesn't... If you tell us he doesn't know he's supposed to look at it because he's misled by this other thing, what difference does it make whether it was there or wasn't there? He wouldn't have found it regardless. Even if it was there, if he... We know what he did. You said he did his best. And let's suppose it was there. Well, he didn't find it, so... No, but the question is what if it's not there? I mean, if it had been there, maybe he would have found it. If it's not there, it's impossible. That's correct, Your Honor. We're not conceding that if it was there, he wouldn't have known to look for it. I thought you said that. No, Your Honor. I don't think I've ever said that, and I don't think our papers have ever said that. Our position has continuously been that and consistently been that he did everything he could. He looked in every place that he could. Every means that was available to him in the law library at San Pedro, he exhausted. And the only thing that he had left was... So the theory is that if it was there, he might have stumbled across it. Your Honor, the theory is that if it was there, he would have stumbled across it. When do you think this period should have begun? When he wrote to the U.N.? No, Your Honor. Or when he got the letter back from the U.N.? Your Honor, when he wrote to the U.N., he had no idea what was out there. He was seeking help. I think the fact that he wrote to the U.N. demonstrates his diligence. The fact that he received something back from the U.N. that gave him a prospect of a claim, it's clear that once he received that, within shortly, within about 39 days or so of receiving that letter, he filed his motion to reopen. So I think at the earliest it could potentially commence is when he received the brochure, an outdated brochure, from the U.N. High Commissioner. And the letter's dated December 10th. When did he actually get it? Do we know? Your Honor, we're not sure of actually when he received it. But we do know that he filed his or he submitted his petition, motion to reopen on January 19th. Can you tell me why is he being represented by the public defender's office? Yes, Your Honor. This is not a criminal case, right? No, Your Honor. Your Honor, our office was appointed by Magistrate Judge Goldman, and I believe two prior counsel, Monica Knox and Evan Janess, had represented Mr. Farshidian. Ms. Knox, as she was leaving our office and moving up to Sacramento, asked me personally to take over this case, and I did. But we had been appointed by Magistrate Judge Goldman prior to that. So Magistrate Judge Goldman appointed the public defender's office to do this? In this matter, Your Honor, it appeared that there was going to be an evidentiary determination of this based on the equitable tolling doctrine. So prior to our actually receiving an evidentiary hearing as to equitable tolling, the Real ID Act passed and the matter was brought directly up. But how does the public defender's office, which deals with criminal matters, get involved in an immigration case at all? Your Honor, periodically we were appointed in habeas matters that are not of a criminal nature. I see. It's because it's a habeas case? Yes, Your Honor. It was filed as a habeas in federal court, and it was from that that while it was proceeding on the habeas route is when the Real ID Act came in and the original jurisdiction came into this court.  Thank you. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors, and may it please the Court. There is simply no evidence in the certified administrative record for much of the due diligence claim that Petitioner is currently stating. What evidence is there in the record at all about what was at the San Pedro facility? As far as evidence, there is actually none. Okay. So how could the BIA make a determination that there was sufficient information at San Pedro to start this period running? Petitioner concedes in the motion itself that he had access to the law library and that that law library had at least one, quote, INS law book. And therefore? That doesn't sound like he concedes that the Federal Register was there. But it is Petitioner's burden to establish that it wasn't for purposes of the motion to reopen. And he did not... And when does it turn out to be his burden? Is it his burden with the initial piece of paper that he files? I'm not sure what the Court means by the initial piece of paper. Well, when he files his motion to reopen, is it his burden to do it then? I'm trying to be sympathetic to both sides here. I'm trying to be sympathetic to the Petitioner for the moment. At the time he files, he doesn't even know the time limit. It is his burden to, at the time he files the motion to reopen, yes. To establish everything necessary for equitable tolling? Yes. But at the time he files, he doesn't even have enough information to know that he needs equitable tolling. But it was his responsibility to... That is something that the Court requires of Petitioners in different contexts, including habeas, very frequently. Yeah. Now, let me ask you this. If it could be established that the Federal Register was not at the San Pedro facility, and if he had properly, in your view, given that information to the BIA, would he be entitled to equitable tolling? The Board has made no determination on that issue, and I would not want to speak before the Board. Well, the government must have a position on that question. A simple allegation that the Federal Register was not present would... Let me ask it then differently. We know that in the Federal Register there is information that says that the period starts to run at the end of March. Yes. So we know that the Federal Register would have put him on notice. But I want to ask the question more broadly. If it had been established in front of the BIA at the time he files his motion to reopen that there was nothing in the San Pedro Law Library, not the Federal Register and nothing else, that alerted him to the time period necessary in which to file, would there be equitable tolling? Again, I cannot speak for the Board before the Board has spoken on that issue. You can't say what position the government might take on this question? I cannot, because the Board is responsible for taking that position, not me. No, the Board is responsible for ruling. You're responsible for taking positions that the government will represent or argue. And I cannot do that without my client ruling on the issue first. Who's your client? The Board. You represent the client? You represent the Board? You don't represent the... The Board is the adjudicator. The Board speaks here for the Attorney General, and I represent the Attorney General. Oh, okay. And... Can I go back to some basic dates here? Because I'm confused about something. He was at Kern County Jail from October 28th to August 2nd, 1999, October 28th, 1998. The enacting legislation came out in October of 1998. He was in Kern County Jail, which you agree had nothing at all to help him, right? The Board assumes that arguendo. Okay. Well, let's assume an arguendo then. It's a good arguendo, actually. And so if the Federal Register came out on that, at or around that time, or shortly after that time, and we all know the Federal Register comes out in reams and reams and reams, and it's the current stuff that people look at, the current Federal Register that would have alerted anybody to the enabling legislation would have occurred, would have been published while he was at Kern County Jail, not when he was at San Pedro. So even if the Federal Register had been at San Pedro, he wasn't there to read it unless he went back many, many months, searching through thousands and thousands of pages of the Federal Register, which is about the densest, most boring thing you could ever read. So, I mean, how could you possibly hold him to such a standard? The Court has held aliens to standards of notice by the Federal Register in previous cases under 44 U.S.C. Section 1507, that's in Williams v. Mukasey, the Ninth Circuit's 2008 decision. That did not provide any sort of exception for when the Federal Register is confusing or voluminous. That statute applies in the immigration context, regardless of whether the particular provision at issue is a confusing provision. All right, but do you agree that the current Federal Register that would have publicized this particular window period that we're talking about would have come out while he was in Kern County Jail? Yes, but Petitioner does not allege that he, that that was not available to him once he returned to San Pedro, and the Board's due diligence finding only concerns his time at San Pedro. And additionally, Petitioner never makes any allegation in the Certified Administrative Record to support his claim today that he engaged in a letter-writing campaign. The only mention he makes of letter-writing in the Certified Administrative Record is on page 62, and he may repeat this allegation elsewhere, but it is limited to this. And he says that he, at the, I'd quote, the end of 1999, wrote a letter to the United Nations. That is not evidence of a letter-writing campaign conducted immediately upon his return to San Pedro on August 2, 1999. And Petitioner concedes that the list of organizations was available to him immediately and throughout his time in San Pedro. Therefore, if he wanted to allege that he engaged in a letter-writing campaign, he certainly could have done so. Petitioner, in fact, submitted no sworn statements whatsoever before the Board of Immigration Appeals. All of his statements were simply signed sincerely, and his name, in the form of motions. Therefore, he submitted no evidence, nothing that could be characterized as evidence whatsoever. What do you think he should have done to perfect this claim, to put the matter before the Board so that they could decide it? Things that have been held sufficient in previous cases include affidavits alleging, sworn affidavits alleging sufficient due diligence, which, in this case, most likely would have included, based on Petitioner's arguments in his brief, some sort of statement regarding the Federal Register, some sort of statement regarding when and to whom he wrote letters, that would go beyond the statement now. The December 10th date, I do not believe is anywhere in the administrative record. I believe that was submitted along only with his habeas. And, again, the affidavit submitted with his habeas petition is not before the Court as part of the certified administrative record. Additionally, he could have named the INS law book that he identified and conceded was in the San Pedro facility. He didn't name that book, and he, therefore, did not meet his burden to allow the Board to assess whether that would have had the relevant regulations in it. Petitioner also could have submitted — Well, he says he couldn't find it in the book. That's not enough? No, because he did not allege that there weren't other sources available in the library where he might have been able to find it. No, no. I'm responding only to your question that he didn't — to your statement he didn't identify the book, the one book, and, therefore, identifying the book is not enough to establish that it wasn't in the book. And I'm saying, well, what if he says, I couldn't find it in the book? Is that enough? And you say, well, he didn't identify other books. I'm talking about that book. That's not enough on its own for the exact reason that he didn't state that there weren't other books or that the places where he might have found it were not available. He also, again, conceded that the names of organizations were available to him, and that concession leads to the question of when he wrote to those organizations, how diligently he did that, and he simply does not allege any sort of diligence. He says that he wrote — You know, this is just fantasy land. Here we have someone who is there, unrepresented, doing, it sounds to me, at least a decent job, and we're putting upon him requirements that I think are, realistically speaking, impossible to fulfill. It may very well be that that's what the law is, but I think we should not fool ourselves into thinking that this is a realistic opportunity for him to learn what the law is. The court has held in other circumstances that due diligence is established when an alien — for example, with regard to law libraries, when the alien — excuse me, it was not an alien in this case. This was a habeas petitioner, not in an immigration case. Submitted affidavits from a prisoner law librarian, for example, to state what was in the law library and what was not. When disabilities were alleged, the affidavits from doctors and psychiatrists to establish incompetence. One sort of thread there is affidavits, sworn statements from individuals usually other than the petitioner him or herself. Petitioner submits no such statements here. Even if those would have been — He can't submit them here, right? I'm sorry? He can't submit them here. Not before the court. My apologies. I just want to make sure I understand here. Where would he have submitted it? Before the board. So why didn't the board say, you haven't submitted enough. We don't know what's there, what's not there. You're alluding to an INS book. We'd like to know what it is that was in that book. Can you tell us more about that? When did you start writing to these organizations? When did you — what did you learn from them? I mean, wouldn't it have been better to have completed the record here so that we're not guessing about what was available to him? Because that's all we were doing here. There was something there. Obviously, he did file a petition after he got this letter from the UNHCR. But we really don't know what was available to him or what wasn't. You may be absolutely right. It was right there, and he could have seen it. But we don't know. There's nothing in the record. Two points as to that issue. First, the question is not whether the board could have issued a different ruling. The question is whether the board abused its discretion in issuing the ruling that it did. And the holding that Petitioner failed to meet his burden was not arbitrary or rational or contrary to law. That is the standard. Second, Petitioner had actually many opportunities to make filings before the immigration judge or the board. He did make many of those. And he never made any sufficient allegation. His first motion to reopen was in January of 2000. And the immigration judge denied that in February of 2000. He then submitted a second motion to reopen before the immigration judge in October of 2000 and appealed to the board in November of 2000. After the board dismissed his appeal, he filed a motion to reopen on March 26, 2001. And following remand, there was another opportunity for briefing until the board issued its decision in March of 2004. So Petitioner had over four years to supplement, amend, request permission to add to his filings. Petitioner presents absolutely no reason why he could not, at some point during those four years, have perhaps written further to organizations, investigated the availability of INS law books once he was out of detention, which he was released during that time period. Was he represented at all during this period, during that four-year period? During that four-year period, to my knowledge, no. Was he ever requested to specifically address the issues that you're raising now about the insufficiency of his allegations about what was there and what wasn't there at the library? Upon remand on February 25, 2003, he was on notice regarding the court's decision in Sokoff-Gonzalez. And a simple reading of that decision would have put him on notice at the very least. And that would not require any research into voluminous Federal Register documents or even any additional representation. Okay, thank you. May I sum up? You are way out of time. Thank you. Thank you. Your Honor, may I just have one minute to respond? Okay, you are out of time as well, but we'll give you a minute to respond. I'll keep it to one minute. Thank you, Your Honor. Your Honor, I just wanted to address Judge Fletcher's concern about, you know, what standard do we want to have? And the Ninth Circuit has actually spoken on that standard in Roy v. Lampert, which was a case that was cited in the government's Rule 28J letter. It was the Williams case that was in the government's Rule 28J letter. Roy actually addresses that issue, and it basically says, as an initial matter, we consider it highly relevant that Roy and Kephart were proceeding pro se until appointed counsel by the district court, and that their allegations regarding diligence would be construed very liberally. And although pro se status alone was not enough to warrant equitable tolling, that it does inform and color the lenses through which we view the filings. But counsel is right when she says that he had opportunities to put this evidence in after he was released from detention. He was pro se, but he could have done it. Your Honor, he put the evidence in in the form of the diligence that he actually underwent. What he didn't put in was that at this time the Federal Register was not available. I mean, I think if that's the code word to basically equitable tolling, and I don't believe it is, that he did not do, but he indicated what he did during the time. I didn't ask you what he did, though. He didn't. He could have done that. He was out of detention, and he had opportunities. He could have presented this to the board. There's nothing that prevented him from doing it. There was no procedural bar. He was there. He could have, if he had thought of doing it, he could have done it. Is that factually correct or not? I think that is factually correct, Your Honor. I mean, he can't do it now, for example. I think that is factually correct, Your Honor. But my understanding in terms of the — There's no but about it. I'm sorry, Your Honor? There's no but about it. No, no, no. You answered my question. He could have done it. Counsel is accurate. Yes, Your Honor. What significance that has is a different question. Your Honor, because I don't believe that the standard is to allege what wasn't there. I think the standard is to allege what extent he went to, what diligence he — You are past your time. Thank you, Your Honor. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Fletcher, Gettleman